UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TSM, Plaintiff, | : | |
| v. | : | C.A. No. 25-49-JJM |
| FAMILY SERVICE OF RHODE ISLAND, Defendant. | : | |

**REPORT AND RECOMMENDATION**[1]

**Public Redacted Version**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This case arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, et seq., and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, et seq. See Second Amended Complaint ("SAC"), ECF No. 40. *Pro se*[2] Plaintiff TSM[3] alleges that she was employed by Defendant Family Service of Rhode

[1] This report and recommendation is issuing publicly with redactions of confidential medical information that the parties included in certain filings under seal. The unredacted version is issuing under seal. The Court adopts this approach in light of the strong presumption that information which the Court relies on for a decision should not be withheld from public scrutiny. See Conservation Law Found., Inc. v. Equilon Enters. LLC, C.A. No. 17-396-JJM, 2026 WL 1256866, at *2 (D.R.I. May 7, 2026) (noting "common law presumption of the public's right of access – vibrant . . . not unfettered – to judicial documents or judicial records, which include materials on which a court relies in determining the litigants' *substantive* rights) (cleaned up).

[2] In light of her *pro se* status, the Court has afforded Plaintiff significant accommodation. E.g., Text Order of Oct. 6, 2025 (granting Plaintiff's motion for accommodation); TSM v. Family Service of Rhode Island, C.A. No. 25-00049-JJM-PAS, 2026 WL 412407, at *1-3 (D.R.I. Feb. 12, 2026) (granting in part Plaintiff's motion for additional accommodation).

[3] Plaintiff was allowed to proceed pseudonymously by the Court via Text Order issued on June 6, 2025. As of this writing, this decision has not been reevaluated. See Doe v. Massachusetts Inst. of Tech., 46 F.4th 61, 73 (1st Cir. 2022) (balance between party's need for anonymity and interests weighing in favor of open judicial proceedings should be periodically reevaluated by court; for example, pseudonymity that was appropriate in pretrial stage may not be appropriate during trial). The First Circuit has recently reiterated the "strong presumption against the use of pseudonyms in civil litigation." Doe v. Smith, ___ F.4th ____, 2026 WL 2718168, at *4, 8 (1st Cir. Sept. 15, 2026) (internal quotation marks omitted) (litigation by pseudonym should occur only in truly exceptional circumstances). For now, Plaintiff is still proceeding pseudonymously.

Island ("FSRI") from October 2020 until she resigned on May 14, 2024. Id. ¶¶ 8, 22. From 2021, Plaintiff claims that she was denied reasonable accommodation of her multiple "documented" disabilities and was subjected to discrimination, harassment and retaliation creating a hostile work environment that resulted in her constructive discharge. See ECF No. 40; see id. ¶ 9. Fact discovery in this case closed on May 15, 2026. Text Order of Feb. 12, 2026.

Now pending before the Court is FSRI's Fed. R. Civ. P. 37(b)(2) sanctions motion seeking to dismiss Plaintiff's SAC or for lesser sanctions due to her failure to provide critically relevant interrogatory answers and responses to document requests, in defiance of two Court Orders requiring her to do so. ECF No. 64; see also TSM v. Family Service of Rhode Island, C.A. No. 25-00049-JJM-PAS, 2026 WL 412407 (D.R.I. Feb. 12, 2026); Text Order of April 23, 2026.[4] The sanctions motion has been exhaustively briefed, and the Court has held two hearings on the discovery issues it presents. ECF No. 71, 80. Mindful of Plaintiff's *pro se* status and allegations of disability, after the first hearing, the Court afforded Plaintiff a second opportunity to explain how her discovery compliance has been "sufficient . . . so as to render sanctions unnecessary"; relatedly, during the second sanctions hearing, the Court advised that it would deny FSRI's motion to strike Plaintiff's "sufficiency submissions" (ECF Nos. 69-70)[5] and would consider them despite alleged irregularities with service. Text Order of July 6, 2026; ECF No.

---

[4] It is important to note that, as an accommodation to Plaintiff's claimed disabilities, based on her *pro se* status and confusion arising from the lack of a protective order, the Court required Plaintiff to provide discovery by a fixed deadline, but specified that the failure to comply with the Order, standing alone, would not trigger Fed. R. Civ. P. 37(b) consequences. TSM, 2026 WL 412407, at *2-3. That is, the Court's first Order to comply with discovery required Plaintiff to comply, but specified that FSRI would have to move again pursuant to Fed. R. Civ. P. 37(a) before it could seek sanctions pursuant to Fed. R. Civ. P. 37(b). TSM, 2026 WL 412407, at *2-3.

[5] By separate Text Order issued today, FSRI's motion to strike (ECF No. 72) Plaintiff's sufficiency submissions (ECF Nos. 69, 70) is denied as stated on the record during the hearing on July 28, 2026. See ECF No. 80 at 7.

72; ECF No. 80 at 7. For the reasons that follow, I reluctantly recommend that the motion be granted and that the SAC be dismissed with prejudice.

**I. Standard of Review**

"A district court may dismiss an action for noncompliance with a discovery order." Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 4 (1st Cir. 2006). "[T]he law is well established . . . that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal." Figueroa Ruiz v. Alegria, 896 F.2d 645, 649 (1st Cir. 1990) (internal quotation marks omitted). When noncompliance with a court order occurs, "the ordering court should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). Although "dismissal ordinarily should be employed as a sanction only when a plaintiff's misconduct is extreme," id., "disobedience of court orders, in and of itself, constitutes extreme misconduct." Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002).

As to dismissal with prejudice, "the First Circuit has cautioned that [it] is a harsh sanction, which should be employed only when a plaintiff's misconduct has been extreme and only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." Reardon v. Lowe's Companies, Inc., 1:21-cv-00362-LEW, 2024 WL 554334, at *2 (D. Me. Feb. 12, 2024) (internal quotation marks omitted), aff'd, No. 24-1269, 2025 WL 947724 (1st Cir. Jan. 22, 2025). When considering dismissal with prejudice, courts should focus on a variety of substantive and procedural factors to determine whether the ultimate sanction is within the district court's discretion. Benitez-Garcia, 468 F.3d at 5. "Among [the

substantive factors] commonly mentioned (this list is not complete) are the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." Id. (internal quotation marks omitted). As to procedure, courts consider whether the offending party was given sufficient notice and an opportunity to explain its noncompliance or argue for a lesser penalty. Id. at 5-7. "And where the case is close, courts should prefer less severe sanctions that preserve the possibility of disposition on the merits." Pomales v. Celulares Telefonica, Inc., 342 F.3d 44, 48 (1st Cir. 2003). As to prejudice, courts may consider that delay itself is prejudicial to both the other party and to the court. See Powell v. Bermudez, C.A. No. 24-73MSM, 2026 WL 1587051, at *2 (D.R.I. June 3, 2026), adopted by text order (D.R.I. June 26, 2026).

A plaintiff's *pro se* status does not provide a basis on which to excuse noncompliance with a court order or the Rules of Civil Procedure. See Instituto de Educacion Universal Corp. v. United States Dep't of Education, 209 F.3d 18, 23 n.4 (1st Cir. 2000); Eagle Eye Fishing Corp. v. United States Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994) ("the right of self-representation is not a license not to comply with relevant rules of procedure and substantive law") (internal quotation marks omitted). Dismissal with prejudice, however, may not be appropriate where a *pro se* party failed to comply with just a single court order. Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007) ("we recently noted that we were unable to find a case in this circuit in which we had upheld a dismissal with prejudice based on a single instance of noncompliance with a discovery order"); Oliver v. Power, No. 1:21-cv-00225-JAW, 2021 WL 4942861, at *2 (D. Me. Oct. 21, 2021) (where *pro se* litigant failed to obey one court

order directing him to file IFP application or pay filing fee, dismissal is without prejudice), aff'd sub nom. Oliver v. Versant Power, 2021 WL 5371550 (D. Me. Nov. 17, 2021).

Nor is there a "'disabled plaintiff' exception to the Federal Rules of Civil Procedure." Duncan v. Sullivan Cnty., 18 Civ. 9269 (PMH)(PED), 2021 WL 6884505, at *17 (S.D.N.Y. Dec. 29, 2021) ("Plaintiff, like all other plaintiffs, including those who may also suffer from physical or mental disabilities . . . is required to prosecute her action and comply with court orders.") (internal quotation marks omitted), adopted, 2022 WL 594181 (S.D.N.Y. Feb. 28, 2022). As a result, "even disabled *pro se* litigants are subject to sanctions, including dismissal, for failure to comply with rules and court orders." Id. at *18 (citing cases); see Grech v. Ford Motor Co., No. 08-10729, 2009 WL 1930052, at *3 (E.D. Mich. June 30, 2009) ("there are hundreds of *pro se* litigants who appear in this Court regularly, many of whom have health issues and physical disabilities") (internal quotation marks omitted); but see Porter v. Martinez, 941 F.2d 732, 733 (9th Cir. 1991) (per curiam) (holding that dismissal sanction was not justified where *pro se* litigant failed to comply with "massive discovery" requests based, in part, on fact that litigant was homeless, indigent and severely disabled). Thus, when a disabled *pro se* litigant has been repeatedly warned of the risk of dismissal yet persisted in the failure to provide information and materials critical to the defense of the case, the court is left with no alternative path to cure the prejudice to the defendant and must dismiss with prejudice. Rose v. Davis, C.A. No. 23-13-MRD, 2025 WL 1330558, at *5 (D.R.I. Mar. 27, 2025), adopted, 2025 WL 1444736 (D.R.I. May 20, 2025); see Williamson v. Bilodeau, No. 23-cv-262-JJM, 2026 U.S. Dist. Lexis 140093, at *1-2 (D.R.I. June 24, 2026) (failure to provide long overdue discovery, despite order compelling production, results in dismissal of case brought by *pro se* claimant alleging violation of rights as disabled person). That is, a claimant's disability does not justify exposing a defendant to

interminable delay or trial by ambush with facts and documents that the claimant alleges exist and is capable of producing, yet (despite court orders to do so) fails to provide. See Rose, 2025 WL 1330558, at *4.

## II. Background Facts

### A. Plaintiff's Allegations/FSRI's Defenses

Plaintiff's SAC principally rests on the allegation that, "[b]eginning in 2021, [she] made repeated good-faith requests for reasonable accommodations"[6] of her "multiple documented disabilities"[7] but "FSRI failed to engage in the interactive process" and "ignored or dismissed these requests for over two years." ECF No. 40 ¶¶ 9-12.1. While the SAC vaguely states that Plaintiff's requests for accommodation were made orally and in writing and are "preserved" in written records, including emails, id. ¶ 12.1, it otherwise contains no factual allegations about the specifics of when or how Plaintiff advised FSRI of any disability or requested accommodation that was not provided. Plaintiff's only specific factual allegation is that, on the day she returned from a medical leave on July 10, 2023, she was placed on a Performance Improvement Plan ("PIP") with monitoring not imposed on others despite positive recognition for her work performance, which she alleges "demonstrates retaliation under the ADA." Id. ¶¶ 13-15. However, the SAC has no facts regarding how this PIP amounted to an adverse employment action.[8] See Walsh v. HNTB Corp., 169 F.4th 330, 340-41 (1st Cir. 2026) (whether PIP is

---

[redacted]

[redacted]

[8] Possibly linked to the PIP, the SAC alleges that FSRI "attempted" to alter Plaintiff's hybrid work schedule. ECF No. 40 ¶ 15. Since it would appear from the face of the pleading that this was only an "attempt," it is difficult to understand how it constitutes an adverse employment action.

adverse employment action requires fact-intensive and PIP-specific inquiry). Instead, the SAC (confirmed by FSRI's Answer, ECF No. 41) acknowledges that FSRI denies that it was aware of "Plaintiff's disabilities" and denies that Plaintiff ever requested reasonable accommodation. ECF No. 40 ¶¶ 12.1, 42.1. Relatedly, FSRI's answer denies Plaintiff's allegations and includes the affirmative defense that Plaintiff never requested a reasonable accommodation. ECF No. 41. Presaging the criticality of discovery in this case, the SAC alleges that Plaintiff's accommodation "requests" are reflected in emails, audio recordings and other "written records." ECF No. 40 ¶ 12.1. The SAC specifically asserts that Plaintiff herself "<u>has complete email threads and recorded meetings that directly contradict</u>" FSRI's denials. <u>Id.</u> ¶ 42.1. In addition, the SAC alleges retaliation (vaguely described as the PIP, a change of schedule, "unique demands," camera use and office attendance requirements and "micromanagement") for protected advocacy. <u>See</u> <u>id.</u> ¶¶ 32-33.1 (emails, notes and award documentation will prove "multiple acts of retaliation"). FSRI also denies these allegations. ECF No. 41 ¶¶ 31-42.2.

Plaintiff's FSRI employment ended on May 14, 2024, with her resignation, which she alleges was a constructive discharge. ECF No. 40 ¶¶ 20-23. As described in the SAC, at a meeting on May 1, 2024, Plaintiff reported what she vaguely describes as ongoing "discrimination, retaliation, and years of inaction" to a FSRI Vice President. <u>Id.</u> ¶ 20. The FSRI Vice President promised a "resolution meeting" on May 14, 2024, by 11 a.m., which FSRI denies. <u>Id.</u>; <u>see</u> ECF No. 41 ¶ 20. When Plaintiff had not heard from the FSRI Vice President by 2:45 p.m. on May 14, 2024, she resigned due to "discrimination, harassment, retaliation, and lack of support." ECF No. 40 ¶ 22. Plaintiff has provided the Court with a copy of her resignation letter. ECF No. 70-4 at 50. But it is equally vague. <u>Id.</u> (resignation was based on "ongoing

discrimination, harassment, and retaliation . . . since returning from my medical leave in July" "it has become too much for me nothing ever changes").

B. Plaintiff's Production of Audio Recordings and Limited Documents

Plaintiff asserts, and FSRI agrees, that Plaintiff produced certain items and documents during the fact discovery period. What follows is a summary of this partial compliance.

First, Plaintiff's sufficiency presentation reveals that, during fact discovery, she produced what she represents are audio recordings (as referenced in the SAC) of certain (seemingly two) meetings with FSRI, both shortly before her resignation, including the May 1, 2024, meeting. ECF Nos. 70-6, 70-7. However, these recordings reflect Plaintiff's belief that she requested accommodation in that one of them contains the vague statement that: "I told her that I didn't request accommodations to inconvenience anybody and that's just what I needed in order for me to be able to do my job properly and also to be able to refer back to conversations." ECF No. 81-1. Otherwise, Plaintiff points to nothing in these recordings that plugs the factual gap with missing information essential to FSRI's defense.

Plaintiff's sufficiency presentation also establishes, and FSRI agrees, that Plaintiff produced medical documents (per FSRI, a total of 403 pages) as her initial disclosures and/or early production.[9] The problem, as FSRI contends, is that this is a "limited" self-curated set, with multi-month gaps for the critically relevant employment period, including no records for 2020 and early 2021. ECF No. 72 at 8-9. Summarized by FSRI, [redacted]

---

[9] The record is not clear regarding when Plaintiff produced these documents. Compare ECF No. 46-7 at 2 (per Plaintiff, "Plaintiff has produced evidence since July 2025"), with ECF No. 46-1 at 3 (per FSRI, "Plaintiff did not begin producing documents until December 14, 2025"). However, like the production of the audio recordings, it clearly occurred during the fact discovery period; the Court has considered it as partial discovery compliance.

[redacted]. ECF No. 72 at 9-10. Bearing on the need for accommodation (consistent with FSRI's defense that it was never presented with a request for reasonable accommodation), this production contains only a May 7, 2024, (that is, just a week before Plaintiff resigned from FSRI) note indicating that a blank accommodation letter was being forwarded by a primary care provider to a mental health care provider; no draft or final version of any such letter was provided. ECF No. 72 at 8-10. This production also included a [redacted] pertinent to the period after Plaintiff resigned from FSRI. ECF No. 45-1. Based on the Court's review of the exemplar documents provided by Plaintiff in her sufficiency presentation, these medical materials are also woefully inadequate to plug the factual gap in that they do not establish the medical basis alleged in the SAC (despite Plaintiff having told the Court that she possesses and can produce such documents) for any specific workplace accommodation during the period of Plaintiff's employment at FSRI.

Plaintiff's sufficiency presentation also includes exemplars of internal FSRI emails.[10] ECF No. 70-4. However, the Court has scoured those that Plaintiff included; none reflect the need for workplace accommodation during the period of employment with FSRI, except for [redacted], for which Plaintiff appears to have been accommodated,[11] ECF No. 70-4 at 17, 40, as well as an email reflecting that FSRI's management team was willing to "explore any needed accommodations." ECF No. 70-4 at 4. Otherwise, the exemplar records included in Plaintiff's sufficiency presentation do not include the "complete

---

[10] Based on bates numbers, at least some of these appear to have been produced by FSRI. E.g., ECF No. 70-4 at 1-4.

[11] Indeed, internal FSRI emails Plaintiff provided to the Court reflect that, despite FSRI's serious concerns about Plaintiff's job performance, FSRI appropriately considered her "accommodation request" for extension of this leave and accommodated Plaintiff's request to extend. ECF No. 70-4 at 7-25.

email threads" that her SAC alleges she possesses and would prove her claim. ECF No. 40 ¶ 42.1.

To summarize Plaintiff's partial compliance (based largely on Plaintiff's sufficiency presentation), the Court finds that Plaintiff's initial disclosures/early production and her production of the audio recordings contain none of the materials and information she claims to possess that would factually support her allegations that, during employment with FSRI:

- She had a medically based need for reasonable workplace accommodation;
- She specifically requested accommodation (other than for [redacted], which accommodation was afforded);
- FSRI failed to afford reasonable accommodation and failed to engage in the interactive process;
- She was subject to workplace harassment, discrimination and retaliation;
- Her working conditions became so intolerable as to result in constructive discharge; and
- She was subjected to other adverse employment actions.

And Plaintiff concedes that she has produced nothing regarding her attempts to mitigate damages by seeking substitute employment after her resignation. ECF No. 71 at 20. Nor has she produced anything in support of her claim of damages based on "emotional distress, pain and suffering, and other non-economic harm." ECF No. 40 at 12.

C. FSRI's Interrogatories and Document Requests

Promptly following entry of the Fed. R. Civ. P. 16 scheduling order, FSRI propounded comprehensive interrogatories and document requests. ECF No. 47 at 1. Pertinent to the sanctions motion, the interrogatories request detailed and critically relevant facts supportive of Plaintiff's claims, particularly her allegation that she repeatedly requested accommodation for

medically documented disabilities but FSRI ignored her. See ECF No. 47 at 2. Plaintiff's initial set of interrogatory answers was provided on September 8, 2025. Id. These were hopelessly deficient in that they contained no responsive information. The document responses similarly represented that documents would be provided but nothing was produced. ECF Nos. 46-4, 46-5. Then, despite months of meet-and-confer efforts by FSRI, Plaintiff provided nothing beyond the documents and the audio recordings discussed above. Finally, on January 5, 2026, Plaintiff supplemented her first set of interrogatory answers with the second. ECF No. 46-10. However, similar to the first set, the second set contains answers that are equally vague and conclusory, devoid of specific factual information, and accompanied by no documents. Id. And Plaintiff continued to promise responsive documents in compliance with FSRI's requests but (other than the documents and audio recordings referenced above) produced nothing. ECF No. 47-11.

D. First Motion to Compel

On January 9, 2026, FSRI moved to compel for the first time. ECF Nos. 46-47. On February 10, 2026, the Court conducted a hearing on this motion and others. As reflected on the record, the Court specially ordered Plaintiff to provide interrogatory answers with "complete information," to produce the medical and other documents reflecting diagnosed impairments impacting her ability to work at FSRI and needed accommodations (which she said she has), and to provide information and supporting documents related to third-party communications about the claims, damages and post-employment mitigation; Plaintiff committed to doing so. TSM, 2026 WL 412407, at *2; ECF No. 61 at 34-44, 47-48. The Court ordered FSRI to prepare and submit a Protective Order, based on Plaintiff's requested draft, to appropriately protect these materials. TSM, 2026 WL 412407, at *1-2; see ECF No. 62. In addition, the Court set a deadline (March 27, 2026) for Plaintiff's complete compliance as to both interrogatory answers

and document production (as to medical documents alternatively suggesting that Plaintiff could, if she wished, promptly provide signed HIPAA forms). This due date was set in reliance on Plaintiff's representation that she could and would comply by or before that date. See TSM, 2026 WL 412407, at *2; ECF No. 61 at 34-37 ("all has to flow"); ECF No. 61 at 25 ("I will provide them the documents."). In light of the delay already caused by Plaintiff's failure to comply with discovery, the Court explained to Plaintiff that her discovery compliance must be completed well before the close of fact discovery and directed the parties to file a joint motion to extend the fact discovery deadline to May 15, 2026. ECF No. 61 at 20-21, 49. That motion was granted by Text Order on Feb. 12, 2026.

Importantly, during the February 10, 2026, hearing, the Court repeatedly cautioned Plaintiff: "if you don't [comply with the Order to provide discovery] the . . . court [may] consider sanctions . . . if a party does not comply with discovery in this kind of case, the court will consider dismissing the case or a court order barring the plaintiff from seeking damages" "that's called preclusion." ECF No. 61 at 36; see id. at 14-15 (caution regarding risk of preclusion if relevant medical documents Plaintiff represented were in her possession are not produced). The Court reiterated these cautions in its written order. TSM, 2026 WL 412407, at *2 nn. 5-6.

Except to provide a partial list of medical providers on March 5, 2026,[12] despite her commitment to the Court to comply and the Court's repeated cautions of the consequences of noncompliance, Plaintiff defied this Order and did nothing by the deadline. See ECF No. 63 at 3-4. That is, she largely ignored the Court's first Order.

E. Second Motion to Compel

[12] FSRI represents that this list was not complete based on its review of the limited medical records Plaintiff had previously produced. ECF No. 63 at 3. Plaintiff has not disputed that representation.

With close-to-complete noncompliance with the first Order, FSRI filed its second motion to compel on April 2, 2026. ECF No. 63. Plaintiff ignored it too. Based on the absence of objection, the Court granted the motion, this time ordering Plaintiff to comply with all pending discovery within thirty days, by May 23, 2026. Text Order of Apr. 23, 2026.

In response to the motion and resulting second Order of the Court, Plaintiff now claims that she finally began working on signing HIPAA forms. ECF No. 70-3 at 1-4. However, instead of timely providing these to FSRI's counsel or otherwise complying with the Court's Order regarding medical materials (including those that Plaintiff had told the Court she has in her possession), on the new deadline set by the April 23, 2026, Text Order (May 23, 2026), Plaintiff simply sent FSRI an email stating that it "should be receiving the [HIPAA] forms by mail"; but nothing arrived. ECF No. 70-2; ECF No. 64 at 1. Also, on the new deadline (May 23, 2026), Plaintiff served her third set of answers to FSRI's interrogatories. ECF No. 64 at 4-5; ECF No. 64-1. Like the two sets that preceded them, these are deficient, utterly devoid of new information, differing from the second set produced in January 2026 only in that Plaintiff added the partial list of medical providers that she had provided in March and they are formatted and worded somewhat differently. Otherwise, the third set defies the Court's February 2026 Order to provide "complete information," in that they are just as vague, conclusory and nonresponsive as two previously-provided sets, which the Court had found to be deficient at the February hearing. See ECF No. 61 at 47-48; see also TSM, 2026 WL 412407, at *2-3. As Plaintiff conceded during the first sanctions hearing, despite FSRI's extensive efforts to meet and confer and despite the Court's efforts during the February hearing, Plaintiff's interrogatory answers remained so deficient that they do not contain even as much factual information as she included in the SAC. ECF No. 71 at 18-19.

F. Motion for Sanctions

With fact discovery closed and still lacking virtually all of the discovery critical to its defense of Plaintiff's claims, on May 27, 2026, FSRI filed the pending motion for sanctions. ECF No. 64. Arguing that Plaintiff's noncompliance with the Court's Orders has left it unable to defend against Plaintiff's claimed disabilities, assess causation, compute or challenge damages or prepare for depositions, FSRI supportably asserts substantial prejudice, including that the passage of time has been materially prejudicial in that at least one employee involved in the events in issue has left FSRI and memories are fading. Id. at 11. In such circumstances, FSRI contends that no sanction less than dismissal would be adequate to ameliorate the prejudice, particularly because Plaintiff has had ample notice of the risk of dismissal yet has persisted in a deliberate pattern of noncompliance and obfuscation by her repeated representations of the existence of responsive material and information and the intent to comply punctuated by periodic production of just enough to evade dismissal while leaving FSRI largely in the dark and hamstrung in its ability to defend against her claims. See id. at 9-13; ECF No. 66 at 5.

Importantly, with the sanctions motion pending and having participated actively in the two sanctions hearings before the Court despite her claimed disabilities, Plaintiff was well able eloquently to argue orally and in six written filings that sanctions should not be imposed, yet (apart from finally sending signed HIPAA forms in July 2026, after the first sanctions hearing) her noncompliance has persisted. That is, in defiance of two Court Orders, and despite a February 2026 warning that she risked dismissal or preclusion, Plaintiff has not even attempted to cure the three hopelessly deficient sets of interrogatory answers, has provided nothing about damages and mitigation, and, beyond the vague allegations in the SAC, has provided nothing ([redacted]) regarding impairments impacting her work at FSRI that

necessitated accommodation, nothing ([redacted]) regarding how and when accommodation was requested or how FSRI responded, and nothing establishing either medical recommendations of workplace accommodation or that she made a specific request for workplace accommodation.

## III. Analysis, Findings and Recommendation

This is a case where the sanction of dismissal must be given serious consideration because, with fact discovery now closed since May 15, 2026, Plaintiff has failed to comply with a sequence of two Orders mandating that she must comply with discovery despite clear warnings of the risk that her case might be dismissed if she does not. The judicial challenge posed by this sanctions motion is that Plaintiff has not failed to produce any discovery, nor has she stated that she adamantly refuses to comply with discovery, nor has she failed actively to participate in the prosecution of the case.

The problem is that, despite extraordinary efforts by FSRI and by the Court, Plaintiff has persisted in failing to provide virtually any discovery on the core matters in issue. Rather, what has emerged is a pattern – exhaustive work by FSRI (and since February 2026, by the Court) to procure compliance, followed by Plaintiff's utterly inadequate production of, for example, another deficient set of interrogatory answers. When holistically viewed in light of what she was ordered to provide, this drip-drip-drip compliance has been so tepid as to permit the inference that it is intentionally calibrated to evade sanctions while blocking FSRI from learning the facts it actually needs to defend the case. Thus, most of what FSRI has requested and needs for its defense (including the factual basis for liability, damages and mitigation) remains outstanding. Nor can FSRI rely on the lack of what has been provided to establish at summary judgment that Plaintiff cannot factually support her claims – Plaintiff insists that she has more and can and will

provide more if the Court will only reopen the fact phase and give her more time. Thus, this case now presents the Court with the classic Fed. R. Civ. P. 36(b) dilemma: it can either restart the fact discovery phase of the case (exacerbating the ongoing prejudice to FSRI) or launch it to "the dispositive phase[, which] will devolve to a trial by ambush in that Plaintiff . . . can say anything and [FSRI] has no discovery to impeach or cross examine [her]." Rose, 2025 WL 1330558, at *4. Or it can impose sanctions.

In response to the sanctions motion, supported by her sufficiency presentation, Plaintiff argues that the Court should focus on what FSRI already has (including what it has produced to her) and on her status as a *pro se* disabled claimant to find that her compliance is sufficient to demonstrate good faith and the lack of prejudice to FSRI so as to render sanctions unnecessary. I do not agree. Thus, I find that, with fact discovery closed, FSRI still lacks almost all of what it needs and that Plaintiff's persistent and ongoing noncompliance has resulted in delay that has prejudiced FSRI, as well as adversely impacted the operations of the Court. Nor do I find that Plaintiff's partial compliance amounts to a good faith effort particularly where Plaintiff persisted in her failure to provide even partially compliant interrogatory answers, at the same time that she has been well able to participate in the briefing and argument to aggressively defend against the sanctions motion. Nor, with three failed chances to provide compliant interrogatory answers, has Plaintiff supplied the Court with anything to support the premise that, given more time, she would comply with her obligations. And Plaintiff's well written meet-and-confer communications with FSRI, written during the fact phase when Plaintiff could have been compiling compliant discovery responses,[13] as well as her oral presentations and extensive

[13] By way of just one example, the Court has considered an email Plaintiff sent to FSRI counsel. ECF No. 54-8.

written filings in opposition to sanctions, belie the proposition that her discovery noncompliance may be excused by her alleged disabilities or personal circumstances.[14]

To conclude, while the Court agrees that Plaintiff has certainly actively participated in the prosecution of this case as she contends, it also finds that she has played an intentional game of hide-the-ball, resulting in significant prejudice to FSRI. That is, she continually has represented that she has responsive information and documents, intends to comply and has periodically provided limited compliance. The result is that, as the Court finds, she has failed to expose the facts that form the basis for her liability allegations and/or for her damage claims at the same time that she has forestalled FSRI's ability to rely on what she has failed to provide by continually representing that there is more. To find that the conduct is intentional, the Court need not look beyond the three sets of similarly deficient interrogatory answers, the third of which was provided in direct defiance of the Court's warning of the consequence if the conduct continued. See Noel v. United Better Homes, LLC, Case No. 1:23-cv-00028-SJM-TLSM, 2025 WL 2712603, at *6 (D.R.I. Aug. 15, 2025) ("By refusing to answer interrogatories and sign his answers under oath, [claimant] deprived defendants of relevant information to which they were entitled, deprived defendants of the ability to use his sworn answers for impeachment or other strategic purposes, and prevented defendants from completing fact discovery."), adopted, 2025 WL 2806764 (D.R.I. Oct. 2, 2025). Based on the foregoing, the Court finds that this is a circumstance where Fed. R. Civ. P. 37(b) sanctions are necessary.

The Court's final task is to determine what sanction is appropriate, in particular whether sanctions less draconian than dismissal with prejudice would be adequate. Benitez-Garcia, 468

---

[redacted]

F.3d at 5 (internal quotation marks omitted). For example, a lesser Fed. R. Civ. P. 37(b)(2)(A) option would be to bar Plaintiff from introducing designated matters in evidence, limiting her to the facts, witnesses and documents that she provided and barring her from relying on the SAC's conclusory allegations where she has failed to respond with factually supportive discovery (or conceded that she has none). See Mello v. Arruda, C.A. No. 23-479JJM, C.A. No. 23-480JJM, 2025 WL 1225220, at *7 (D.R.I. Apr. 28, 2025) (court imposes preclusion sanction where failure to produce medical discovery impacts damages but not merits of underlying claim), adopted, No. 23-CV-479-JJM-PAS, 2025 WL 1433383 (D.R.I. May 19, 2025). Relatedly, if the case is not dismissed, the Court could require a curative adverse inference instruction based on Plaintiff's failure to produce, including to deem proven in FSRI's favor the issues of mitigation and damages regarding which Plaintiff concedes she has provided nothing. The problem with these cumbersome solutions is that they point to the same outcome. That is, if Plaintiff is limited to what she provided to the Court in her sufficiency presentation, this case will stumble forward burdening both FSRI and the Court towards the inevitable judgment against Plaintiff based on her inability to prove either liability or damages.

At bottom, the Court's determination should rest on Plaintiff's intentional failure to comply with the February 12, 2016, Order (despite the Court's on-the-record explanation of what compliance means and the Court's oral and written warnings of the consequences of noncompliance), followed by her failure even to file an opposition to FSRI's second motion to compel and her failure to comply with the April 23, 2026, Order. The Court's approach should be guided by the proposition that the "law is well established . . . that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions

before resorting to dismissal." Figueroa Ruiz, 896 F.2d at 649 (internal quotation marks omitted). Under the circumstances of this case, lesser sanctions are unlikely to advance the case or do anything more than delay the dismissal of the action. Noel, 2025 WL 2712603, at *6-7. In consideration of these factors, though with reluctance in light of Plaintiff's status as a *pro se* allegedly disabled litigant, I recommend dismissal with prejudice. See Vallejo v. Santini-Padilla, 607 F.3d 1, 7-10 (1st Cir. 2010); Pladsen v. Wall, C.A. No. 07-323S, 2008 WL 4366015, at *2-3 (D.R.I. Sept. 16, 2008).

**IV. Conclusion**

Having carefully considered Plaintiff's submissions, as well as Plaintiff's extensive written and oral arguments, I reluctantly recommend that FSRI's sanctions motion (ECF No. 64) to dismiss this case with prejudice be granted, except that FSRI's request for attorney's fees caused by the sanctions motion should be denied. Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 30, 2026